IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 4:02-cr-26-SPM-AK

OSCAR LEE LENTON,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Doc. 95, Motion to Vacate, by Oscar Lee Lenton.  The Government has filed its response, Doc. 103, and Defendant has filed a reply.  Doc. 106.  In response to the Court's order, the Government has filed its supporting exhibits, Doc. 113, and Defendant has filed a response thereto.  Doc. 114.  This cause is therefore in a posture for decision.  Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

**BACKGROUND**

Defendant was originally indicted for possession of a firearm and ammunition by a prior convicted felon.  Doc. 1.  Later, by superseding indictment, he was charged with possession with intent to distribute crack cocaine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm and ammunition by a prior convicted felon.  Doc. 17.

The day before the superseding indictment, Defendant filed a motion to suppress in

which he argued that law enforcement entered his residence without a search warrant and without permission. Doc. 16. The Court held a hearing on the motion, and afterward denied the motion. Doc. 36. In denying the motion, the Court recognized that the "testimony at the suppression hearing presented a factual dispute" and found the testimony of law enforcement to be the "most credible." *Id*. With that in mind, the Court concluded:

> Lenton's consent to search was freely and voluntarily given. Lenton was not placed under arrest when he gave his consent. No coercive police procedures were used. The officers knocked on the door and were led inside by [Valerie] Miller [Defendant's fiancee]. The officers did not display weapons or make any show of authority to effect their entry. Miller voluntarily led them inside.
>
> With Lenton, the officers still did not display weapons or make any show of authority. They spoke with Lenton in a conversational tone of voice. Lenton was being cooperative with the officers and understood he had a right to refuse consent to search. In fact, he did revoke his consent after the officers found the firearm and the drugs.
>
> Lenton is familiar with the criminal justice system because he has a lengthy criminal history. Before the officers found the firearm and drugs, Lenton made a voluntary, tactical decision to cooperate with the officers by retrieving the $40 they came to find. Although his plan failed when the officers themselves found the firearm and the drugs, Lenton's consent given before then was nonetheless voluntary. There is no basis for suppressing the evidence.

*Id*. The Court therefore found that "the officers were given consent by Miller to enter the home and consent by Lenton to search it" and that their consent was freely and voluntarily given. *Id*.

After trial at which Defendant testified, the jury convicted him on all counts. He was sentenced to 240 months on the drug conviction, concurrent with 300 months for being a felon in possession of a firearm, and both sentences were consecutive to 60 months for possession of the firearm in furtherance of a drug crime. Doc. 63.

On appeal, Defendant challenged the Court's denial of the suppression motion "because

he never consented to the police officers' entry into his residence" and also argued that the Court "had an obligation to revisit sua sponte it earlier denial of his motion to suppress" after the Government "introduced evidence at trial which he claims demonstrated that the police forcefully entered his home." Doc. 90.

As to the denial of the motion to suppress, the court found: "The district court chose between the competing versions of the events offered by Lenton and Miller on the one hand and the officer on the other. This factual determination was the district court's to make, and we will not disturb it." *Id*. It concluded: "[W]e accept the district court's factual finding that the officers had implied consent and did not make a show of force which negated the voluntariness of that consent." *Id*.

As to the Court's obligation to sua sponte reconsider its suppression ruling, the Court found that Defendant could not show that the failure to do so constituted plain error. *Id*.

## DISCUSSION

1.  Speedy trial.

In his first claim, Defendant contends that his speedy trial rights were violated and that counsel was ineffective for failing to move to dismiss the indictment on this ground. According to him, he was arrested on November 15, 2001, but was not indicted until May 8, 2002, far outside the 30-day period in the Speedy Trial Act. *See* 18 U.S.C. § 3161(b) (indictment charging individual with commission of offense shall be filed within thirty days from date on which such individual was arrested in connection with such charges).

For the 30-day time period of the Speedy Trial Act to commence, "a person must be held for the purpose of answering to a federal charge." *United States v. Shahryar*, 719 F.2d 1522,

1524-25 (11th Cir. 1983). "Thus, if one is held by state officers on a state charge and subsequently turned over to federal authorities for federal prosecution, the starting date for purposes of the Act is the date that defendant is delivered into federal custody." *Id.* at 1525.

Defendant was originally indicted on May 8, 2002. Doc. 1. At that time, he was in state custody on state charges, *see* Doc. 6 (petition for writ of habeas corpus ad prosequendum returned unexecuted for first appearance on indictment because Defendant was in state custody "being tried on state charges in state court), and he was not taken into federal custody until August 22, 2002.

Defendant's claim is patently without merit, and counsel was not ineffective for failing to challenge the indictment on this ground.

In his reply, Defendant makes a new claim that the failure to try him within 70 days after the return of the indictment constituted a violation of § 3161(c)(1). That claim is equally without merit, as the speedy trial clock ran, not from the date of indictment, but from the date "the defendant has appeared before a judicial officer of the court in which such charge is pending." In this case, the clock began running on August 22, 2002, with Defendant's first appearance before the Magistrate Judge. It then stopped with the filing of the motion to suppress on October 1, 2002, and remained stopped until the disposition of that motion, November 13, 2002. *See* 18 U.S.C. § 3161(h)(1)(F). Trial commenced a week later on November 20, 2002. At that time only 48 days of the 70-day time period had passed. Thus, this claim should likewise be denied.

2. Failure to communicate plea offer.

In this claim, Defendant charges that trial counsel, William Clark, rendered ineffective assistance when he "failed to communicate to Movant a plea offer, or inform Movant of his right

to enter a guilty plea without a plea agreement." In his reply, Defendant states that "it is s in [his] best interest to concede the claim...." Doc. 106. With the concession in mind, the claim should be denied.

      3.      Failure to object to violation of right to confront witnesses.

In this ground for relief, Defendant maintains that counsel was ineffective when he failed to object that a witness, Morris Ferrell, was not made available by the Government for cross-examination after the Government introduced a recording of the controlled buy which undercover officers made from Ferrell, who bought the drugs from Defendant with money provided by the officers. In his view, the introduction of the taped undercover transaction between Ferrell and the officers violated *Crawford v. Washington*, 124 S.Ct. 1354 (2004). He also claims that the Government was improperly allowed to present "hearsay testimony concerning what Morris Ferrell told the agents with respect to the controlled buy."

Having carefully considered the matter, the Court finds that the introduction of the tape did not violate either the Confrontation Clause of the Constitution or the evidentiary rules regarding hearsay, and thus, counsel was not ineffective for objecting to the tape on these grounds. First, Ferrell's statements on the undercover recording do not qualify as testimonial evidence as contemplated by Crawford, as they were "neither testimony at a preliminary hearing, nor testimony before a grand jury, nor testimony at a former trial, nor a statement made during a police interrogation," and they were not otherwise made "under circumstances which would lead the declarant [Ferrell] to believe that the statement would be available for use at a later trial." *United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006). Instead, the conversation which occurred on the tape between Ferrell and the undercover officers was a drug buy

negotiation, and "it is clear that [Ferrell] never would have spoken to [the officers] in the first place" if he had known they were law enforcement officers since he was immediately arrested for selling drugs to them. *Id.* Furthermore, when a statement is admitted for context, not for the truth of what is said, the Confrontation Clause is not violated, and the statement is not hearsay. *United States v. Wilson*, 238 Fed. Appx. 571, 574-75 (11th Cir. 2007). Here, the recording put the events of the evening in context and explained why the officers went to Defendant's house after Ferrell handed them two slabs of crack. Consequently, counsel had no grounds on which to challenge the recording and was not ineffective for failing to advance these arguments.

    4.    Failure to call Ferrell as witness.

Counsel was also not ineffective in failing to call Ferrell as a witness. According to Defendant, Ferrell would have testified that "moments before the bust," he left a black bag containing a gun inside Defendant's house. However, even if Ferrell had testified as Defendant indicates–a conclusion which is doubtful given the statement by Defendant's investigator, see Doc. 113, Attach. 2--the outcome of the proceeding would not have been different. It is immaterial as to whether the gun belonged to Ferrell or to Defendant, the only question being whether Defendant either actually or constructively possessed the firearm. According to Ms. Miller's testimony at the suppression hearing, Defendant "had the black bag" after talking to Ferrell. If Ferrell had testified that the gun was in the black bag, then Defendant had, at the very least, constructive possession of the gun, and Ferrell's testimony would not have helped him.

    5.    Failure to advise jury that firearm belonged to Ferrell.

As noted in the preceding section, even if counsel had been able to prove that the firearm belonged to Ferrell, there is not a reasonable probability that the outcome of the proceeding

would have been different. Defendant was not charged with owning the subject firearm but with possessing it, two very different things, and it is of no consequence who the actual owner of the gun was.

      6.      Failure of seek reconsideration of motion to suppress.

In this claim, Defendant charges that counsel acted ineffectively when he failed to seek reconsideration of the Court's suppression ruling after the tape of the events of the evening was played for the jury. According to Defendant, the tape corroborated Miller's testimony that she did not give consent to the officers to enter the home. In particular, he points in his reply to the fact that the officers can be heard knocking and announcing their presence.

In this Court's view, the fact that the officers forcefully knocked and announced their presence to the occupants of Defendant's home does not affect the Court's previous conclusion that the officers did not use force or improper coercion to gain entrance into the home. Thus, the Court does not discern any basis on which counsel could have made a motion for reconsideration, and even if he had presented the motion, there is not a reasonable probability that the Court would have retreated from its previous ruling simply because the officers followed their constitutionally mandated duty to knock and announce.

      7.      Failure to object to Government's vouching for witnesses.

In this ground, Defendant claims that counsel acted deficiently when he "failed to voice an objection to the government's impermissible and improper vouching for the credibility of the testimony of the agents." He does not, however, point the Court to any specifics, except to say that the improper vouching occurred in opening statements, the Government's case in chief, and during closing arguments. He claims in his reply that an evidentiary hearing is necessary to flesh

out this claim.  Even without any guidance from Defendant, the Court has reviewed the trial transcript and has discovered nothing approaching the elements necessary to show improper vouching.  *See United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983) (improper vouching occurs either by making explicit personal assurances of witness' veracity or by indicating implicitly that prosecutor has information not presented to jury to support witness' testimony).  Therefore, counsel did not act deficiently in failing to raise vouching as an issue.

      8.      Failure of counsel to file motion for judgment of acquittal.

In this claim, Defendant charges that counsel was ineffective for failing to move for a judgment of acquittal as to the firearms counts.  In particular, he claims that the Government did not meet it burden of proof that the firearm furthered the drug trafficking offense or that he knew about the gun or had constructive possession of it.

To determine whether the firearm was possessed in furtherance of a drug trafficking crime, the Court would, on a motion for judgment of acquittal, have looked at such factors as the type of drug activity, the accessability of the firearm, the type of firearm and whether it was loaded, the proximity of the gun to drugs or drug proceeds, and the circumstances under which the gun was found.  *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002).  It then would have viewed the evidence in the light most favorable to the Government and drawn all reasonable inferences from that evidence in the light most favorable to the Government.  Under those circumstances, there is not a reasonable probability that even if counsel had made the motion, the Court would have granted it given the fact that the subject .38 caliber handgun, from which the serial numbers had been removed, was loaded and was found in immediate proximity to the drugs and buy money immediately after a drug buy.

As to the issue of possession, again, there is not a reasonable probability that the Court would have granted a judgment of acquittal if counsel had made the motion.  The testimony from the officers established that Defendant admitted having the buy money (though only because someone asked him to hold it for him) and that he showed the officers the location of the money under a bed in a bedroom where Defendant kept his clothes.  The firearm was under the bed next to the money and a plate with crack residue on it.  This was sufficient to raise a jury issue as to Defendant's dominion and control over the gun.

9. Cumulative effect.

In this claim, Defendant argues that the cumulative effect of counsel's errors deprived him of due process.  Because none of Defendant's claims regarding counsel's performance have merit, there can be no cumulative harmful effect.

10. Failure of appellate counsel to raise trial counsel's errors.

This claim is without merit.  The competence of trial counsel cannot generally be raised on direct appeal, and even so, trial counsel did not commit any errors which appellate counsel should have raised.

**CONCLUSION**

Having carefully considered the matter, the Court finds no merit to any of Defendant's claims.  Accordingly, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 95, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **_21st_** day of February, 2008.

        *s/ A. KORNBLUM*
        **ALLAN KORNBLUM**
        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**